IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DANIEL K. WISEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17-cv-328-JPG-CJP |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant.[1] | ) | |

## MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Daniel K. Wiseman seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) pursuant to 42 U.S.C. § 423.[2]

## Procedural History

Plaintiff applied for DIB and SSI on June 12, 2013, alleging a disability onset date of October 26, 2011. (Tr. 168-75.) Plaintiff's applications were denied initially and again upon reconsideration. (Tr. 53-92.) Plaintiff requested an evidentiary hearing, which Administrative Law Judge (ALJ) Michael Scurry conducted on January 25, 2016. (Tr. 20-52.) ALJ Scurry ultimately issued an unfavorable decision. (Tr. 401-17.) Plaintiff appealed to the Appeals Council, which denied review and rendered the ALJ's decision the final agency decision. (Tr. 1-6.) Plaintiff exhausted his administrative remedies and filed a timely Complaint (Doc. 1).

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. *See* https://www.ssa.gov/agency/ commissioner.html (visited Feb. 7, 2017). She is automatically substituted as defendant in this case. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).
[2] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423 *et seq.* and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c *et seq.* and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925, which details medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

## Issues Raised by Plaintiff

Plaintiff argues the ALJ erred in assessing plaintiff's intellectual impairment and failed to fully develop the record.

## Applicable Legal Standards

To qualify for benefits, a claimant must be "disabled" pursuant to the Social Security Act. The Act defines a "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must result from a medically demonstrable abnormality. 42 U.S.C. § 423(d)(3). Moreover, the impairment must prevent the plaintiff from engaging in significant physical or mental work activity done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations require an ALJ to ask five questions when determining whether a claimant is disabled. The first three questions are simple: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe physical or mental impairment; and (3) whether that impairment meets or is equivalent to one of the listed impairments that the regulations acknowledge to be conclusively disabling. 20 C.F.R. § 404.1520(a)(4); *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). If the answers to these questions are "yes," then the ALJ should find that the claimant is disabled. *Id.*

At times, an ALJ may find that the claimant is unemployed and has a serious impairment, but that the impairment is neither listed in nor equivalent to the impairments in the regulations—failing at step three. If this happens, then the ALJ must ask a fourth question: (4) whether the claimant is able to perform his or her previous work. *Id.* If the claimant is not able to, then the

burden shifts to the Commissioner to answer a fifth and final question: (5) whether the claimant is capable of performing *any* work within the economy, in light of the claimant's age, education, and work experience. If the claimant cannot, then the ALJ should find the claimant to be disabled. *Id.*; *see also Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

A claimant may appeal the final decision of the Social Security Administration to this Court, but the scope of review here is limited: while the Court must ensure that the ALJ did not make any errors of law, the ALJ's findings of fact are conclusive as long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is evidence that a reasonable person would find sufficient to support a decision. *Weatherbee*, 649 F.3d at 568 (citing *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)). The Court takes into account the entire administrative record when reviewing for substantial evidence, but it does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). But even though this judicial review is limited, the Court should not and does not act as a rubber stamp for the Commissioner. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

### The ALJ's Decision

ALJ Scurry found plaintiff met the insured status requirements through December 31, 2012, and had not engaged in substantial gainful activity since October 26, 2011, the alleged onset date. The ALJ opined plaintiff had severe impairments of obesity, diabetes mellitus, hypertension, and borderline intellectual functioning. ALJ Scurry determined plaintiff did not have an impairment or combination of impairments that met or equaled a listing. (Tr. 403-04.)

The ALJ opined plaintiff had the residual functional capacity to perform medium work with several additional limitations. Furthermore, plaintiff was able to perform past relevant work as well as other work that existed in the economy and was therefore not disabled. (Tr. 407-16.)

**The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1. **Agency Forms**

In the agency forms, plaintiff indicated that a bad back, bad legs, high blood pressure, and a learning disability prevented him from maintaining employment. He had a twelfth-grade education and attended special education classes. Plaintiff previously worked as a butcher, dishwasher, and lifting assistant, and also worked in maintenance. (Tr. 190-91.)

Plaintiff could prepare sandwiches and frozen dinners and could mow, shop, and wash laundry. He could not count change, use a checkbook, or complete money orders. He sometimes had difficulty understanding and reading instructions, completing tasks, and concentrating. (Tr. 201-06, 240.)

Plaintiff submitted a letter from the guidance office of his former high school. The counselor verified that plaintiff graduated and received special education services. However, his school records had been destroyed. (Tr. 230.)

2. **The Evidentiary Hearing**

ALJ Scurry conducted an evidentiary hearing in January 2016, at which plaintiff was represented by counsel. Plaintiff had lived alone since his divorce sixteen years prior. Plaintiff's twelve-year-old son visited him every other weekend and stayed with plaintiff in his apartment.

(Tr. 26-28.) Plaintiff's mother lived in the apartment next to plaintiff's. (Tr. 37.)

Plaintiff last worked in 2007 for a park district, where he performed maintenance and repairs. He worked at the park for about seven years but was laid off due to a lack of funding. He also worked for Med Force EMS as a lifting assistant, which entailed lifting patients. He was laid off from this job as well after a year. Plaintiff worked as a "fire watcher" for two years until he was laid off. He was also employed as a deer butcher for under a month but the job ended because customers were not bringing in deer. He helped pick up brush at the city barn for about three years. Plaintiff mowed his friend's lawn for money. (Tr. 29-35.)

### 3. Medical Records

Dr. David Warshauer conducted a mental status evaluation of plaintiff on September 12, 2013. Plaintiff told Dr. Warshauer he left his parental home when he was eighteen years old and fathered a son who was nine years old at the time of the evaluation. Dr. Warshauer asked plaintiff to list five major cities and plaintiff responded with Washington, New York, California, Texas, and Florida. He was able to name "four of five presidents since 1950" but included "Bama." Plaintiff could not subtract 7 from 100. He was unable to explain the "grass is greener" proverb. He was able to identify five objects Dr. Warshauer pointed to but called a stapler a "staple gun" and could only recall two of the objects ten minutes later. When Dr. Warshauer asked plaintiff how much change he would receive if he gave a clerk one dollar for a fifty-five cent candy bar, plaintiff answered "35." Plaintiff stated if he found an envelope in the street that was sealed, addressed, and stamped, he would "leave it." If plaintiff were the first person in a movie theatre to see smoke and fire, he would "get out." (Tr. 314-15.)

Dr. Warshauer opined that plaintiff's intellect was "such that if he were employed he would require constant directions and redirection." Plaintiff was not always able to understand

5

instructions. (Tr. 315.)

Dr. Warshauer diagnosed plaintiff with "rule out mild mental retardation." He opined plaintiff would require an adult payee if he were awarded benefits. (Tr. 316.)

Dr. Donald Henson conducted a record review on September 18, 2013. He noted "no current treatment for any psychiatric condition. There is no indication of medication. No longitudinal history of significant psychiatric difficulties." Dr. Henson also opined that "the claimant's allegations of significant psychiatric impairment are judged to be less than credible. There is no specific evidence and indicated difficulties due to alleged learning disability as in prior filing as well. Face-to-face interview indicated no difficulty with anything." (Tr. 56-57.)

Dr. Leslie Fyans conducted a record review on May 30, 2014, and concurred with Dr. Henson's findings. (Tr. 77-78.)

## **Analysis**

Plaintiff argues the ALJ failed to develop the record related to his intellectual impairments and that a fully developed record would demonstrate he meets the requirements of 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.05 (Listing 12.05) for intellectual disability.[3]

As an initial matter, plaintiff asserts the Commissioner waived any argument as to several of plaintiff's contentions for failing to adequately respond. Assuming *arguendo* that plaintiff is correct, courts have discretion to overlook a waiver. *See, e.g., United States v. Wilson*, 962 F.2d 621, 627 (7th Cir. 1992); *Amcast Indus. Corp. v. Detrex Corp.*, 2 F.3d 746, 749 (7th Cir. 1993). Moreover, as set forth below, Seventh Circuit case law weighs heavily against plaintiff, and avoiding the merits of his case would elevate form over substance. The Court will therefore address the substance of the issues.

---

[3] Previous versions of the listing referred to individuals under 12.05 as "mentally retarded." The Court, in this opinion, utilizes "intellectually disabled" unless using a direct quote.

To meet Listing 12.05, a claimant must establish onset of the impairment before age 22, plus either "[a] valid verbal, performance, or full scale IQ of 59 or less," 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.05(B) (2016), or "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function," 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.05(C) (2016).[4]

Standardized intelligence tests such as IQ tests are essential to the adjudication of cases of intellectual disability under Listing 12.05(B) and (C), the listings relevant to this case. 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00(D)(6) (2016). However, the record in the present case does not contain one. To prove his intellectual disability, plaintiff indicated he attended special education classes in high school, had a learning disability, found it difficult to follow instructions, and could not handle money. Plaintiff also pointed to Dr. Warshauer's diagnosis of "rule out mild mental retardation" and his notation that plaintiff would require constant direction in a work environment.

The ALJ concluded plaintiff did not meet Listing 12.05 because Dr. Warshauer's "rule out" diagnosis is inconsistent with a medically determinable impairment and there was no evidence to support intellectual disability prior to age twenty-two. Later in his opinion, the ALJ noted plaintiff's activities of daily living were inconsistent with a finding of intellectual disability. The ALJ emphasized that plaintiff lived independently, drove, shopped, and maintained employment in the past.

Plaintiff asserts the ALJ should have ordered additional psychological testing such as an IQ test to fully assess his intellectual ability.

An ALJ has a duty to develop a full and fair record, which requires an ALJ to order supplemental testing when there is a gap in the medical record that "is significant and

---

[4] Listing 12.05 also contains two other options not applicable here.

prejudicial." *Warren v. Colvin*, 565 F. App'x 540, 544 (7th Cir. 2014). The need to gather additional evidence "involve[s] a question of judgment, and we generally defer to the ALJ's determination whether the record before her has been adequately developed." *Wilcox v. Astrue*, 492 F. App'x 674, 678 (7th Cir. 2012). This is particularly true in counseled cases. *Id.*

Plaintiff's argument is similar to that of the claimant's in *Griffin v. Barnhart*, 198 F. App'x 561 (7th Cir. 2006). There, the claimant asserted the ALJ should have found him intellectually disabled under Listing 12.05 because of his placement in special education classes during childhood, a poor academic record, illiteracy, and a physician's note to "rule out mild mental retardation." *Id.* at 564. The claimant, however, did not supply the ALJ with "IQ, or any other test results, which are required by statute to establish mental retardation." *Id.* Like plaintiff, the claimant in *Griffin* argued it was the ALJ's duty to order a psychological examination to fully develop the record. *Id.* The Seventh Circuit Court of Appeals rejected that argument, stating,

> The ALJ's duty to develop the record is not so sweeping that it can relieve an applicant entirely of his own responsibility for supporting his claim; instead, the ALJ must exercise some discretion when and how he should order additional evidence. [The doctor's] note is the only evidence suggesting mental retardation, but the notation to 'rule out mild mental retardation' was by no means a diagnosis. Given the dearth of evidence supporting [the claimant's] claim, the ALJ did not abuse his discretion in refusing to order additional tests.

*Id.*

Plaintiff, here, presented slightly more evidence than the claimant in *Griffin*. For example, he provided a letter from his guidance counselor proving he attended special education classes. However, receiving special education does not render a claimant *per se* intellectually disabled. *See Adkins v. Astrue*, 226 F. App'x 600, 605 (7th Cir. 2007).

Additionally, plaintiff's case is readily distinguishable from *Warren v. Colvin*, 565 F.

App'x 540 (7th Cir. 2014), where the Seventh Circuit Court of Appeals remanded an ALJ's decision to the Commissioner for additional IQ testing. In *Warren*, the claimant provided several IQ tests from his childhood. The Seventh Circuit Court of Appeals faulted the ALJ because the claimant's "childhood IQ scores appear[ed] to show that his intellectual limitations manifested before age 22, yet the ALJ offered no reason for declining to order more recent testing in light of those scores." *Warren*, 565 F. App'x at 544. Plaintiff, here, did not provide any similar evidence of an intellectual disability.

Ultimately, the claimant bears the burden of establishing he meets the requirements of a listing. *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). Plaintiff fell short of meeting this burden and the ALJ's duty to develop the record does not extend as far as proving plaintiff's case for him.

Plaintiff also argues the ALJ erroneously interpreted Dr. Warshauer's "rule out" diagnosis as meaning the doctor actually ruled out "mild mental retardation." The ALJ initially stated, "[Dr. Warshauer] ruled out a mild mental retardation diagnosis. . . . A ruled out diagnosis is not consistent with a medically determinable impairment." (Tr. 404.) It appears from this statement that the ALJ may have misunderstood the meaning of a "rule out" diagnosis—that the condition actually needs to be ruled out and remains a possible diagnosis. Later, however, the ALJ opined, "As discussed above, a rule out diagnosis was not consistent with the medical [sic] determinable impairment and the claimant's ability to work in the past in a semiskilled occupation, independent living, driving, shopping, etc. . . ." (Tr. 410). It appears from this statement that the ALJ actually understood the meaning of a "rule out" diagnosis. Despite the ambiguity, any error is harmless because, as the Seventh Circuit explained in *Griffin*, a "rule out" diagnosis is not equivalent to an actual diagnosis of "mild mental retardation." *Griffin*, 198 F.

9

App'x at 564. "[W]e will not remand a case for further specification when we are convinced that the ALJ will reach the same result." *Pepper v. Colvin*, 712 F.3d 351, 267 (7th Cir. 2013). Substantial evidence supports the ALJ's decision that plaintiff did not meet Listing 12.05.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is **AFFIRMED.**

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**
**DATE: February 26, 2018**

                                                                        s/ J. Phil Gilbert
                                                                        **J. PHIL GILBERT**
                                                                        **DISTRICT JUDGE**